UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
TIMOTHY M. NASH,                                 :        CASE NO. 1:12-CV-1959
                                                 :
         Plaintiff,                            :
                                                 :
vs.                                              :        OPINION & ORDER
                                                 :        [Resolving Doc. Nos. 1, 2, 3]
CLEVELAND ELECTRIC &                             :
ILLUMINATING CO., *et al.*,                      :
                                                 :
         Defendants.                           :
                                                 :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro Se* plaintiff Timothy M. Nash filed this action against defendants Cleveland Electric & Illuminating Company ("CEI") and CEI employee James Pfeister. In the Amended Complaint, plaintiff alleges he was negligently exposed to polychlorinated biphenyls ("PCBs") during the course of two separate arrests for stealing electrical transformers. He seeks monetary damages.

Plaintiff also filed an Application to Proceed *In Forma Pauperis*. (Doc. 2). For the reasons set forth below, that Application is **denied** and this action is dismissed.

**I. Background**

On August 13, 2011, plaintiff was arrested for stealing an electrical transformer located at 9200 George Street in Cleveland, Ohio. According to the police reports attached to plaintiff's filings, the police arrived shortly after the transformer was stolen and noticed drag marks and a heavy oil trail leading away from the scene. The oil trail led the officers to plaintiff and another individual, who were found in close proximity to the transformer, a two ton chain hoist, bolt cutters,

and a crow bar. (Doc. 1-5 at 1-2). The electrical transformer at issue belonged to defendant CEI.

Plaintiff was thereafter arrested and charged with stealing the transformer. He claims the transformer leaked "gallons of [PCB] fluid" onto the street. He maintains the arresting officers nevertheless forced him to sit on the ground, thereby directly exposing him to the PCB fluid. Plaintiff further asserts defendant Pfeister, a supervisor at CEI, was called to the scene to recover the transformer and that he did nothing to warn plaintiff of the dangers of PCB exposure. Plaintiff maintains that, when he was released on bond, he unwittingly carried the PCB fluid home on his clothing, causing his family and friends to be exposed. Plaintiff was later indicted in September 2011 on charges of breaking and entering, grand theft, vandalism, and possessing criminal tools as a result of this incident. *See* Cuyahoga County Ct. Cmn. Pl. Case No. CR-11-553521.

On November 28, 2011, plaintiff was again arrested for stealing an electrical transformer belonging to defendant CEI. This particular transformer was located on a telephone pole at 9400 Elizabeth Avenue in Cleveland, Ohio. Plaintiff asserts it also leaked PCB fluid onto the street and that he was again forced to sit in or near it during his arrest. Plaintiff was arrested for this incident on charges of breaking and entering, theft, vandalism, disrupting public service, possessing criminal tools, and interference with electrical wires. *See* Cuyahoga County Ct. Cmn. Pl. Case No. CR-11-556979. This time, he was not released on bond. Instead, plaintiff was held at the Cuyahoga County Jail as a pre-trial detainee.

The Cuyahoga County Court of Common Pleas docket reflects plaintiff was found guilty after jury trials in Case Nos. CR-11-553521 and CR-11-556979 of the following charges: breaking and entering, grand theft, vandalism, possessing criminal tools, disrupting public service, and interfering with electrical wires. He was sentenced to a term of 18 months imprisonment and post-

release control for up to three years. The state court docket reflects Plaintiff was transferred from the Cuyahoga County Jail to a state prison facility on August 7, 2012. He is currently incarcerated at Richland Correctional Institution in Mansfield, Ohio.

Plaintiff filed his original Complaint on July 30, 2012, seeking monetary damages. (Doc. 1). He thereafter filed his Amended Complaint on August 24, 2012. (Doc. 3). Therein, plaintiff argues defendant CEI showed "reckless disregard" for his health and safety by using PCBs in their electrical transformers and failing to attach appropriate warning labels to those transformers. He asserts defendant Pfeister is liable for failing to either warn plaintiff of his potential PCB exposure during his arrests, or advise him that he should seek immediate medical attention. Plaintiff further claims that he has suffered medical symptoms as a result of his alleged PCB exposure, including a "mental virus," skin disorders, headaches, "nerve problems of shaking from time to time," and "a loss of clear sight." (Doc. 3 at 3).

Plaintiff also alleges he contracted MRSA[1] while being housed at the Cuyahoga County Jail in January 2012. (Doc. 1 at 2). He claims "small red bumps" have formed on his body that may be a recurrence of MRSA or may be an "undiagnosed disease" resulting from his alleged PCB exposure. He asserts he is "in imminent danger due to having an undiagnosed disease, being subject to diseases, and not being given proper examination when the contamination happened over one year ago." (Doc. 3 at 3). Plaintiff acknowledges his red bumps are being treated with Permethrin cream, but alleges this treatment does not appear to be working. He states he is concerned that Jail physicians have not adequately diagnosed his condition. (Doc. 3 at 3). Plaintiff

---

[1] Methicillin-resistant Staphylococcus aureus ("MRSA") is a type of staph bacteria that does not respond to some antibiotics that are commonly used to treat staph infections. *See* www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004520/.

seeks monetary relief.

## II. Standard of Review for 28 U.S.C. § 1915(g)

Pursuant to 28 U.S.C. § 1915(a), a court may authorize the commencement of an action without prepayment of fees if an applicant has shown by affidavit that he satisfies the criterion of poverty. Prisoners, however, become responsible for paying the entire amount of their filing fees and costs from the moment they file the Complaint. 28 U.S.C. § 1915(b); *McGore v. Wigglesworth*, 114 F.3d 601, 604 (1997). When an inmate seeks pauper status, the only issue for the Court to determine is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. *Id.* Moreover, absent imminent danger, the benefit of the installment plan is denied to prisoners who have on three or more prior occasions, while incarcerated, brought an action that was dismissed on the grounds that it was frivolous, malicious or failed to state a claim upon which relief could be granted. 28 U.S.C. § 1915(g).

In interpreting the "three strike" language of this section, the Sixth Circuit has held that "where a complaint is dismissed in part without prejudice for failure to exhaust administrative remedies and in part with prejudice because 'it is frivolous, malicious, or fails to state a claim upon which relief may be granted,' the dismissal should be counted as a strike under 28 U.S.C. § 1915(g)." *Pointer v. Wilkinson*, 502 F.3d 369, 377 (6th Cir.2007). Dismissals of actions entered prior to the effective date of the Prisoner Litigation Reform Act also are counted toward the "three strikes referred to in 28 U.S.C. § 1915(g)." *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir.1998).

As the language of 28 U.S.C. § 1915(g) indicates, the three strike provision will not apply if a "prisoner is under imminent danger of serious physical injury." The imminent danger exception "is essentially a pleading requirement subject to the ordinary principles of notice pleading."

*Vandiver v. Vasbinder*, No. 08-2602, 2011 WL 1105652, at *3 (6th Cir. March 28, 2011). For purposes of determining whether a pleading satisfies this exception, the Court considers whether the plaintiff is in imminent danger at the time of the filing of the complaint. *Vandiver,* 2011 WL 1105652 at *2 (noting that "the plain language of § 1915(g) requires the imminent danger to be contemporaneous with the complaint's filing."). Although the Sixth Circuit has not offered a precise definition of "imminent danger," it has suggested that the threat of serious physical injury "must be real and proximate." *Rittner v. Kinder*, No. 06–4472, 2008 WL 3889860 (6th Cir. Aug. 20, 2008). Moreover, "[a]llegations that the prisoner has faced danger in the past and allegations that are conclusory, ridiculous, or clearly baseless do not suffice to allege imminent harm." *Tucker v. Pentrich*, No. 10-1388, 2012 WL 1700701 at *1 (6th Cir. May 15, 2012).

This Court has already found that plaintiff herein has accumulated three strikes within the meaning of 28 U.S.C. § 1915(g). Specifically, in *Nash v. Kochavar*, Case No. 1:11CV329 (N.D. Ohio)(Gwin, J.), this Court noted that, while incarcerated, plaintiff filed more than three previous actions which were dismissed as frivolous, including *Nash v. McFaul*, No. 1:11 CV 330 (N.D. Ohio April 1, 2011)(Polster, J.); *Nash v. Reid*, No. 1:11 CV 70 (N.D. Ohio Mar. 14, 2011)(Polster, J.); *Nash v. Reid*, No. 1:10 CV 2926, (N.D. Ohio Feb 1, 2011)(Boyko, J.); *Nash v. Cuyahoga County*, No. 1:10 CV 2386 (N.D. Ohio Dec. 20, 2010)(Oliver, J.); *Nash v. City of Cleveland*, No. 1:05 CV 1578 (Aug. 4, 2005)(Manos, J.); *Nash v. Cuyahoga County Metropolitan Housing Authority*, No. 1:98 CV 2145 (Nov. 2, 1998)(Nugent, J.).

Because plaintiff has accumulated three strikes pursuant to 28 U.S.C. § 1915(g), the Court must decide whether he has adequately pled that he was under "imminent danger of serious physical injury" at the time his Complaint was filed. Plaintiff's allegations of imminent danger relate to

medical symptoms he believes are a result of his alleged exposure to PCBs, including a "mental virus," skin disorders, headaches, "nerve problems of shaking from time to time," and "a loss of clear sight." He also expresses concern regarding "small red bumps" on his body which he believes are undiagnosed and may be a recurrence of his MRSA infection. (Doc. 3 at 3). He acknowledges that he received medical treatment at the Jail, but appears concerned that his true condition remains undiagnosed.

The instant action is dismissed for the following reasons. This Court has already considered and addressed the issue of plaintiff's medical treatment in another action recently filed by plaintiff; i.e. *Nash v. Cuyahoga County Jail*, Case No. 1:12CV1870 (N.D. Ohio) (Polster, J.). In that case, plaintiff alleged he was in "imminent danger" due to the presence of "red bumps" on his body that he feared were signs of a recurring MRSA infection. The Court conducted a teleconference regarding Plaintiff's allegations on August 2, 2012 with Cuyahoga County Jail Director of Corrections Ken Kochavar, Assistant Law Director of the Cuyahoga County Law Department Christopher Russ, defendant Haller, and plaintiff. During this teleconference, plaintiff informed the Court that he had been seen by the Cuyahoga County Jail physician on July 16, 2012 and given a ten-day course of antibiotics. He claimed the antibiotics did not cure the "red bumps." Accordingly, the Court issued an Order on August 3, 2012 requiring Plaintiff to be seen again by the physician for follow-up treatment by 3:00 p.m. on that date. *See Nash v. Cuyahoga County Jail*, Case No. 1:12CV1870 (N.D. Ohio) (Doc. 3 at 2).

In the instant case, plaintiff does not allege the Jail failed to provide him medical assistance in accordance with Judge Polster's Order. Indeed, in yet another action filed in this Court, *Nash v. Tobik*, Case No. 1:12CV1422 (N.D. Ohio)(Polster, J.), Plaintiff indicated in a recent filing that

after the Court's teleconference, he "was taken immediately to the county jail medical floor for examination and culture." *See* Case No. 1:12CV1422 (Doc. 6 at 1). Moreover, plaintiff specifically states in his "Writ of Injunction" filed in Case No. 1:12CV1870 that he was examined by and received treatment from a prison physician for his "red bumps" condition. *See* Case No. 1:12CV1870 (Doc. 4 at 1). Certainly, plaintiff had the opportunity during his continuing treatment to raise his concerns regarding his other medical symptoms. As plaintiff has received repeated medical attention, the Court finds the "imminent danger" exception to § 1915(g) does not apply in this case.

Finally, the Court notes that, on August 3, 2012, plaintiff was permanently enjoined from filing new lawsuits or other documents in this Court without first seeking leave of Court to do so. *See Nash v. Cuyahoga County Jail*, Case No. 1:12CV1870 (N.D. Ohio) (Polster, J.) (Doc. 3 at 3-4). The Court has addressed the instant action because the original Complaint herein was filed prior to the entry of the August 3, 2012 permanent injunction. However, plaintiff is cautioned that the terms of the injunction are still in effect, and he may not file any other new lawsuits or any other documents in this action without following the specific procedures set forth in this Court's Order dated August 3, 2012.

### IV. Conclusion

Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. 2) is denied and this action is dismissed. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

---

[2] 28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."

IT IS SO ORDERED.

Dated: November 5, 2012                      *s/ James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE